**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Daniel Paul DEVORKIN,**
**Defendant–Appellant.**

No. 97–30318.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 8, 1998.

Decided Nov. 3, 1998.

Michael Donahoe, Assistant Federal Defender, Helena, Montana, for defendant-appellant.

Richard A. Friedman, United States Department of Justice, Washington, D.C., for plaintiff-appellee.

Before: CANBY and TASHIMA, Circuit Judges, and TAKASUGI, District Judge.*

TASHIMA, Circuit Judge:

Daniel Paul Devorkin pled guilty to a charge of solicitation of murder-for-hire in violation of 18 U.S.C. § 373 and was sentenced to a 108–month term of imprisonment. He appeals his sentence, contending that the statutory maximum term of imprisonment is five years, not 20 years, as the district court held. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1292, and we affirm.

## I.

Devorkin, a Montana resident, contacted a confidential informant and asked him to kill Karen Ramsey, Devorkin's former spouse, who lived in Seattle, Washington. In return, Devorkin offered to kill the informant's former son-in-law. The informant contacted law enforcement officials and, after several monitored conversations with Devorkin, he introduced Devorkin to Special Agent Gunderson of the Bureau of Alcohol, Tobacco, and Firearms, who posed as a "hit man." At a motel in Montana, Devorkin gave Gunderson $500, one-half of the $1,000 price to commit the murder, and photographs of Ramsey. Devorkin was arrested at a second meeting with Gunderson at which Gunderson falsely told Devorkin that he had murdered Ramsey.

Devorkin eventually pled guilty to a charge of solicitation of a crime of violence in violation of 18 U.S.C. § 373(a). Under that section, whoever solicits another person with the intent that the person

> engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against ... the person of another in violation of the laws of the United States ... shall be imprisoned not more than one-half the maximum term of imprisonment or ... if the crime solicited is punishable by life imprisonment or death, shall be imprisoned for not more than twenty years.

18 U.S.C. § 373(a). The underlying felony Devorkin solicited was murder-for-hire, under 18 U.S.C. § 1958. Section 1958 provides a sliding scale of punishment that depends on the outcome of the intended crime. If no injury occurs, the maximum term of imprisonment is 10 years. If personal injury results, the maximum sentence is 20 years' imprisonment. If death results, the offense is punishable by death or life imprisonment. *See id.*

Devorkin contends that since Ramsey was unharmed, the maximum sentence for violating § 373 is five years. He argues that the relevant maximum term of imprisonment under § 1958 is 10 years because Ramsey suffered no bodily injury as a result of the solicitation. Under this theory, one-half the maximum term for the underlying offense would be five years. The district court, while noting that Devorkin's interpretation of the statute was plausible, nonetheless agreed with the government that the correct interpretation of the statute called for a 20–year maximum sentence. We agree.

## II.

■ The question of § 373's maximum sentence as applied to Devorkin is one of statutory interpretation, which is a question of law reviewed de novo. *See United States v. Jarvouhey*, 117 F.3d 440, 441 (9th Cir. 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 866, 139 L.Ed.2d 764 (1998).

## III.

Devorkin urges us to adopt a case-by-case, fact-based approach, under which the court would consider the actual result of the defendant's crime, rather than the crime solicited, to determine the maximum sentence. He first points out that §§ 373 and 1958 do not direct the sentencing court to assume that the murder occurred. Second, he argues that the legislative history of § 373 supports his interpretation. Third, he contends that the rule of lenity should apply because the

---

* The Honorable Robert M. Takasugi, Senior United States District Judge for the Central District of California, sitting by designation.

statute is susceptible to two reasonable interpretations.

■ We begin with the statute's language. Section 373 uses as its reference point "the crime solicited." 18 U.S.C. § 373(a). For example, § 373 imposes a maximum sentence of 20 years if "the crime solicited" is punishable by life imprisonment or death. The maximum prison term for all other solicitations prohibited under § 373 is one-half of the prison term for "the crime solicited." Thus, § 373 does not instruct us to look at the actual sentence that would be imposed for the underlying violation according to the particular facts of each case.[1]

The structure of §§ 373 and 1958 buttresses our reading of the statute. The highest maximum sentence under § 373 is 20 years' imprisonment. *See* 18 U.S.C. § 373(a). Under § 1958, the maximum sentence is death or life imprisonment. *See* 18 U.S.C. § 1958(a). The government persuasively argues that Devorkin's interpretation would render § 373's 20-year maximum superfluous in the only cases to which Devorkin contends it should apply—those in which the solicitation results in death. For if the purported hit man had killed Ramsey, Devorkin could have been charged under § 1958 and 18 U.S.C. § 2, which provide for a sentence of death or life imprisonment, instead of under § 373, which provides a maximum sentence of only 20 years. Because, if the crime is completed and results in death, the solicitor would be charged with the completed, substantive crime solicited, § 373's maximum for crimes punishable by life imprisonment or death would never be used; this part of the statute would become a useless appendage. Thus, a categorical interpretation fits better within the statutory framework than Devorkin's interpretation.

The legislative history of § 373 also supports a categorical interpretation. The Senate Judiciary Committee's report clearly indicates that the provision was intended to reach persons who solicited crimes, but were unsuccessful, and that other provisions were in place to deal with the situation when the crime solicited was completed:

> The Committee believes that a person who makes a serious effort to induce another person to commit a crime of violence is a clearly dangerous person and that his act deserves criminal sanctions whether or not the crime of violence is actually committed. The principal purpose of the new section is to allow law enforcement officials to intervene at an early stage where there has been a clear demonstration of an individual's criminal intent and danger to society. Of course, if the person solicited actually carries out the crime, the solicitor is punishable as an aider and abettor.

S.Rep. No. 98–225, at 308 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3487.

In sum, the language and structure of the statute, in conjunction with its legislative history, clearly confirm that Congress intended to provide a significant penalty for solicitation, even if the underlying crime was not brought to fruition.

Interpreting § 373 categorically is also in accord with the admittedly meager case law on this issue. We have previously reasoned that the court examines, not the result, but the defendant's intent, in determining whether a violation of § 373 has occurred. *See United States v. Korab,* 893 F.2d 212, 215 (9th Cir.1989) (noting that § 373 "requires a finding, not that a federal offense resulted, but that [the defendant] intended that acts constituting a federal offense result"). Although the issue of whether the statute has been violated differs from the question of the maximum authorized sentence, *Korab* indicates that in interpreting § 373, the court should look, not at the result of the underlying crime, but at the defendant's intended crime—that is, the crime solicited.[2] *See also United States v. Schmidt,* 105 F.3d 82 (2d Cir.1997) (adopting a categorical approach to

---

1. Devorkin is correct that there is no language in § 373 requiring the court to assume that the solicited murder actually occurred. It is equally true, however, that there is no language directing the court to consider the fact that the murder did *not* occur.

2. Similarly, scholarly commentary on solicitation notes that "[t]he defendant's culpability is to be measured by the circumstances as he believes them to be." 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 6.1, at 15 (1986). Thus, "it is *not* a defense to a solicitation charge that, unknown to the solicitor, the person

§ 373 for solicitation of the murder of a federal officer under 18 U.S.C. § 1114, although without discussion).[3]

Our categorical approach is also consistent with the interpretation of many sentence enhancement statutes. For example, in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court adopted a categorical approach to determine whether a prior offense is a "violent felony" for purposes of the Armed Career Criminal Act, 18 U.S.C. § 924(e). *See Taylor*, 495 U.S. at 600, 110 S.Ct. 2143. Under that provision, a defendant who has previously been convicted of a violent felony and who is found in possession of a firearm is subject to an enhanced sentence. *See* 18 U.S.C. § 922(e), (g). The Court declined to examine the underlying facts of Taylor's prior convictions; instead, it held that the sentencing court should follow "a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Id.* at 600, 110 S.Ct. 2143. We have followed this approach:

> To discourage extensive fact-finding regarding past criminal activity, sentencing courts may only consider "the statutory definition of the crime, any conduct charged in the indictment or information, the defendant's guilty plea or plea agreement, and any jury instructions."

solicited could not commit the crime," *id.*, or that "the person solicited is an undercover agent and under no circumstances would have committed the crime solicited," *id.* n. 107. In order for the crime of solicitation to be completed, "[t]he crime solicited need not be committed." *Id.* at 3.

3. In *United States v. Peterson*, 867 F.2d 1110 (8th Cir.1989), abrogated on other grounds by *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the defendant argued that the "crime solicited" in § 373 referred to the crime he was found guilty of, which carried a maximum sentence of 10 years, leading to a five-year sentence under § 373. *See id.* at 1114. However, the court noted that the indictment charged him with solicitation to violate a different section, which allowed penalties of up to 20 years confinement, and concluded that the 10-year sentence under § 373 was proper. *See id.* at 1114–15 ("To violate section 373 it is not necessary that [the defendant] himself violate section 1512(a); only that he solicit someone else to do so.").

*United States v. Wofford*, 122 F.3d 787, 792 (9th Cir.) (quoting *United States v. Wood*, 52 F.3d 272, 275 (9th Cir.1995)), *cert. denied*, — U.S. —, 118 S.Ct. 233, 139 L.Ed.2d 164 (1997).

We have also applied the categorical approach to the Sentencing Guidelines' career offender provision, U.S.S.G. § 4B1.1. In *United States v. Becker*, 919 F.2d 568 (9th Cir.1990), we adopted *Taylor*'s categorical approach under U.S.S.G. § 4B1.1. We noted that, as in *Taylor*, the statute in question referred to a defendant's prior "convictions" rather than to his prior conduct. *See Becker*, 919 F.2d at 570. We also agreed with the reasoning in *Taylor* that "as a practical matter it would be difficult and potentially unfair to re-litigate each of a defendant's prior crimes as part of his sentencing determination." *Id.* We have reaffirmed this approach in subsequent cases. *See United States v. Williams*, 47 F.3d 993, 994 (9th Cir.1995) (allowing resort to the elements of the crime and the defendant's charged conduct); *United States v. Young*, 990 F.2d 469, 472 (9th Cir.1993) ("[A] sentencing court is not free to make a 'wideranging inquiry into the specific circumstances surrounding a conviction.'") (*quoting United States v. Johnson*, 953 F.2d 110, 113 (4th Cir.1992)).[4]

Yet another example of a statute under which we have given categorical treatment is

While the categorical language of *Peterson* supports our interpretation, the court appears to have based the defendant's solicitation sentence on the specific rather than categorical nature of the underlying offense. That is, the court looked to the underlying statute's maximum sentence for attempted murder (20 years) rather than murder (death or life imprisonment). Under our interpretation of § 373, we would look to the latter, resulting in a maximum sentence for Peterson of 20 years instead of 10. We respectfully decline to follow *Peterson* in this regard; to base the sentence on an underlying crime of attempted murder contradicts the categorical approach by bringing the fact that the murder did not occur into consideration.

4. For examples of the categorical approach in other circuits, *see United States v. Damon*, 127 F.3d 139, 142–43 (1st Cir.1997); *United States v. McQuilkin*, 97 F.3d 723, 727–28 (3d Cir.1996), *cert. denied*, — U.S. —, 117 S.Ct. 2413, 138 L.Ed.2d 178 (1997).

8 U.S.C. § 1326(b)(2), which enhances the punishment for a person who illegally reenters the United States after having been deported and who has suffered a prior conviction for an "aggravated felony." *See United States v. Lomas*, 30. F.3d 1191, 1192 (9th Cir.1994). In analyzing whether the prior offense constituted an aggravated felony for purposes of sentence enhancement, we found it proper to examine "only ... the statutory definition of [the prior offense], not the underlying factual circumstances of his crime." *Id.* at 1193.

The categorical approach is preferable to a case-by-case analysis for a number of reasons. First, it increases uniformity in sentencing. *See Damon*, 127 F.3d at 145. Second, it is easier to apply than a fact-based analysis. By using a categorical approach, "[t]he sentencing court is ... spared from mini-trials on prior offenses, which have already been once adjudicated, when deciding the appropriate punishment." *Id.; see also Taylor*, 495 U.S. at 601–02, 110 S.Ct. 2143 (describing the "daunting" practical, legal, and fairness dilemmas posed by a factual approach). Even though a factual inquiry in our type of case would not require the reexamination of cases already adjudicated, it would require collateral inquiries having little to do with the criminal intent that § 373 intended to punish.

For all of the above reasons, we hold that § 373 requires a categorical approach, rather than a fact-based, case-by-case analysis of the actual result of the solicitation. Under this approach, the maximum sentence for solicitation of murder-for-hire is 20 years, because the maximum sentence for murder-for-hire under § 1958 is death or life imprisonment.

### IV.

■ Finally, Devorkin contends that the rule of lenity should apply because there are two reasonable interpretations of § 373. That rule requires a court to adopt the interpretation of an ambiguous statute that is most favorable to the criminal defendant. *See Staples v. United States*, 511 U.S. 600, 619 n. 17, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). However, the rule can be invoked only when a statute remains ambiguous "af-

ter consulting traditional canons of statutory construction." *United States v. Shabani*, 513 U.S. 10, 17, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994). In fact, the Supreme Court has found the rule to be inapplicable "unless there is a grievous ambiguity or uncertainty in the language and structure of the Act, such that even after a court has seize[d] every thing from which aid can be derived, it is still left with an ambiguous statute." *Chapman v. United States*, 500 U.S. 453, 463, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) (alteration in the original) (citations and internal quotation marks omitted). *See also Staples*, 511 U.S. at 619 n. 17, 114 S.Ct. 1793 (noting that the ability to resort to "the background rule of the common law favoring *mens rea* and the substantial body of precedent [the Court has] developed construing statutes that do not specify a mental element" was sufficient to save the statute from being "grievously ambiguous").

■ Moreover, it is insufficient for Devorkin to put forth an alternative interpretation, because "[t]he mere possibility of articulating a narrower construction ... does not by itself make the rule of lenity applicable." *Smith v. United States*, 508 U.S. 223, 239, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993). Instead, the rule applies "for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute." *United States v. R.L.C.*, 503 U.S. 291, 305–06, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992) (emphasis added) (quoting *Moskal v. United States*, 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990) (citation omitted)) (internal quotation marks omitted). *See also Bates v. United States*, 522 U.S. 23, 118 S.Ct. 285, 291, 139 L.Ed.2d 215 (1997) (noting that the rule of lenity is inapplicable when "nothing in the text, structure, or history" of the statute warranted the defendant's interpretation).

■ While Devorkin's interpretation of the statute is plausible, § 373 is not grievously ambiguous. As discussed above, § 373 speaks in terms of the maximum sentence for "the crime solicited," rather than the sentence for the resulting crime. The structure of § 373 and § 1958 suggests that a categorical interpretation of § 373 is required to

470

avoid rendering part of it superfluous. Further, the legislative history supports a categorical interpretation of § 373. Thus, after "seiz[ing] every thing from which aid can be derived," the statute is sufficiently unambiguous such that the rule of lenity cannot be invoked.

### V.

Because the district court correctly held that § 373 imposes a 20-year maximum term of imprisonment when the crime solicited is murder-for-hire prohibited by § 1958, the judgment and sentence are

**AFFIRMED.**